■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAD C. MACK, Appellant. [935 NYS2d 190]—

Spain, J.P.

Following the August 2002 shooting death of Theresa Ford at her home in the Town of Orange, Schuyler County, defendant was charged in a six-count indictment with felony murder and other charges. After the completion of jury selection on May 28, 2003, defendant entered a guilty plea to felony murder and first degree robbery with no sentencing promise. When the presentence report disclosed that defendant was receiving mental health treatment, County Court ordered a competency examination to determine defendant's fitness to proceed and, when the psychiatric examiners were divided on defendant's capacity, the court ordered a competency hearing (*see* CPL 730.20 [1]; 730.30 [4]). Following the April 2004 competency hearing, the court found that defendant was not an incapacitated person (*see* CPL 730.10 [1]) and granted his request, made months earlier in October 2003, to substitute his assigned attorney with Susan BetzJitomir as counsel of record. BetzJitomir then moved to withdraw defendant's plea, which the court denied, and defendant was sentenced to an aggregate prison term of 25 years to life in prison.

On defendant's direct appeal, this Court found that the fail-

ure to promptly abide defendant's post-plea request to substitute counsel deprived him of his Sixth Amendment right to counsel of his choice (39 AD3d 882, 884 [2007]). As the violation occurred in October 2003, subsequent to defendant's plea, our decision did not disturb the guilty plea, but we did vacate the 2004 orders finding defendant to be competent to proceed and competent at the time of his plea, and denying his motion to withdraw his guilty plea.

Upon remittal, defendant (represented by BetzJitomir, who continues to represent him on appeal) was reexamined and determined to be fit to proceed at that time; defense counsel thereafter indicated that she was no longer challenging defendant's competency to proceed. Counsel then moved to withdraw defendant's 2003 guilty plea, contending that he had lacked the capacity to enter a guilty plea at that time and requested a competency hearing and examination to determine his fitness at the time of his plea. Counsel also argued that defendant's former counsel had been ineffective in failing to raise the issue of defendant's mental health prior to his guilty plea, among other grounds.

County Court held an evidentiary hearing in November 2008, at which defendant's mental health at the time of his 2003 plea was reconstructed, and then issued a comprehensive decision and order (dated July 2, 2009) finding that defendant was competent on the day he entered his guilty plea. The court also concluded that defendant's former counsel had not ineffectively represented him, and denied defendant's motion to withdraw his plea. Defendant was sentenced in September 2009 to an aggregate prison term of 25 years to life, and now appeals.

On appeal, defendant's primary claim is that County Court abused its discretion by denying his motion to withdraw his guilty plea because the evidence established that, at the time of his plea, he did not have the capacity to enter a valid guilty plea and his prior trial counsel was ineffective in failing to recognize and establish his incapacity prior to proceeding with the plea. Upon review, we disagree, finding that the record fully supports the court's conclusion that defendant was competent at the time of his guilty plea, which was voluntary, knowing and intelligent, and we discern no abuse of discretion in the court's denial of his motion to withdraw that guilty plea (*see People v Alexander*, 97 NY2d 482, 485 [2002]; *People v D'Adamo*, 293 AD2d 869, 870-872 [2002], *lv denied* 98 NY2d 730 [2002]; *see also* CPL 220.60 [3]).

In determining that defendant was not incapacitated during the May 28, 2003 plea proceedings, County Court relied, quite

appropriately, on its own extensive observations of and interaction with defendant in chambers and during court proceedings, both prior to and at the plea. The court witnessed, and considered in evaluating defendant's competence, defendant's testimony at the February 2003 *Huntley* hearing, defendant's active participation at numerous court appearances, including during plea negotiations and in jury selection (the day of the plea), and defendant's appropriate responses during the plea colloquy (*see People v Alexander*, 97 NY2d at 485-486).

A review of the transcript of the plea colloquy reveals that defendant was fully informed of all of his trial-related rights, including those he would be foregoing by a guilty plea, and of the consequences of a guilty plea. He was allowed to confer with counsel at length, and the plea terms were carefully explained to him. In addition, he affirmed that he had not been pressured or coerced and was not claiming to be suffering from any mental disability, and he understood and desired to enter the guilty plea and had adequate time to discuss it with his attorney. Review of the transcripts of the proceedings prior to and at the guilty plea discloses defendant's coherence and "not the slightest indication that defendant was uninformed, confused or incompetent" (*People v Alexander*, 97 NY2d at 486). Likewise, County Court rationally gave significant weight to numerous letters that defendant had written to the court, District Attorney, family members and others between the fall of 2002 and early summer of 2003, which "reflect[ed] the thinking of an individual who understands his legal situation and in sum his understanding of the court process and principles of plea bargaining."

Extensive medical testimony and records were also adduced at the hearing and relied upon by County Court, indicating that defendant first reported psychotic symptoms (auditory hallucinations and paranoid delusions) to a jail social worker, Daniel Cohen, after his 2002 arrest. He was later diagnosed with schizo-affective disorder and prescribed antipsychotic and antidepressant medication; defendant showed improvement within one month. The March 2003 progress notes of Mihai Dascalu, a Schuyler County Mental Health Department psychiatrist who treated defendant from 2002 to 2004, reflect that defendant reported a significant reduction in auditory hallucinations with some mild confusion, but the clinical observation was that his thoughts were logical and he was oriented. Progress notes made on May 12, 2003 reflect that defendant continued to complain of hearing whispers, and his antipsychotic medication dosage was increased. Significantly, defendant was seen by a

social worker, Arnie Bagchi, hours after his May 28, 2003 plea, who found defendant playing cards and noted that he was "thoughtful and articulate," and defendant discussed his clear rationale for entering a guilty plea. Cohen saw defendant the next day and observed that he was calm but wondering if he had done the right thing. Dascalu's June 12, 2003 progress notes reflect that defendant reported that his auditory hallucinations had disappeared with the increased antipsychotic dosage the month before. At that time, defendant discussed his rationale for his guilty plea, i.e., his hope for sentencing leniency. Dascalu evaluated defendant in August 2003 (in connection with his earlier challenge to his competency to proceed), and concluded that his mental illness did "not interfere with his capacity to understand the proceedings against him or assist in his defense."

County Court also considered the conflicting psychiatric testimony and reports presented by the parties. The People's expert, Gary Horowitz—an experienced practicing psychiatrist—interviewed defendant in 2008, and reviewed defendant's plea colloquy, *Huntley* testimony, statements to police, letter and mental health records during the time period of his plea. He also reviewed his own March 2004 exam of defendant and the reports of other mental health professionals who examined defendant pursuant to CPL article 730 in 2003 to 2004. Horowitz opined that, at the time of the plea, defendant was capable of entering a knowing, voluntary and intelligent plea, and was not suffering from psychosis and, if he had been, it did not interfere with his ability to enter a valid plea. He further concluded that defendant had periodically produced or feigned the increasing symptoms to meet his legal needs. Defendant's expert, Veena Garyali, a psychiatrist who had examined defendant in August 2003, examined him again in 2008 and reviewed his mental health records. Garyali diagnosed defendant with schizoid affective disorder (a combination of symptoms of schizophrenia and the affective part of bipolar disorder), which she concluded had rendered defendant incapable of understanding and, thus, not competent to enter, a plea in 2003. Garyali, who had little criminal court competency experience, had not, however, reviewed the transcripts of the plea colloquy or *Huntley* hearing or defendant's letters, supporting the court's implied decision to credit Horowitz's more experienced and informed opinion over Garyali's contrary opinion.

Defendant also testified at the hearing, asserting that he had some delusional thoughts and auditory hallucinations on the day of his plea (i.e., heard voices or spirits telling him to follow

counsel's advice), and that these voices, combined with counsel's advice, induced him to enter a guilty plea. He also admitted that he personally wrote almost all of the letters in evidence. Aside from being self-serving, defendant's testimony was not particularly persuasive and suggested that he understood the nature of the plea proceedings but later developed regrets about his plea. In fact, defendant did not raise his claim about his capacity to enter a plea until his pro se letter to County Court seeking to withdraw his plea, two months after that plea, and the contemporaneous mental health records do not support the conclusion that defendant had been coerced or lacked the capacity at the time of the plea.

A history of mental health problems, by itself, " 'does not necessarily render a defendant incompetent to enter a knowing and voluntary plea' " (*People v Mears*, 16 AD3d 917, 918 [2005], quoting *People v Barclay*, 1 AD3d 705, 706 [2003], *lv denied* 1 NY3d 567 [2003]). Upon review of all of the foregoing record evidence, particularly the plea colloquy and medical reports documenting defendant's mental health at or near in time to his plea, we find that defendant has not demonstrated a compelling basis for disturbing County Court's conclusion that he was competent, that his plea was knowing, voluntary and intelligent, and that his psychiatric condition and medications did not undermine his ability to understand the terms and consequences of his guilty plea (*see People v D'Adamo*, 293 AD2d at 872; *see also People v Seaberg*, 74 NY2d 1, 11 [1989]; *People v Motz*, 52 AD3d 1029, 1031 [2008], *lv denied* 11 NY3d 791 [2008]; *People v Greene*, 274 AD2d 842, 843 [2000], *lv denied* 95 NY2d 963 [2000]).

Similarly unpersuasive is defendant's claim that County Court abused its discretion in denying his motion to withdraw his plea based upon allegations that his counsel at the time of the plea, Public Defender James Halpin, was ineffective for failing to investigate or raise the issue of his mental health prior to his plea or for deceiving him into pleading guilty. Halpin, a very experienced defense attorney who represented defendant from the time of his August 2002 arraignment until his December 2003 retirement, submitted an affidavit in response to defendant's motion. Halpin attested that defendant was able to discuss his case intelligently with him, appeared to understand the proceedings and actively participated in his defense, including plea negotiations, all consistent with the record evidence and County Court's own observations. It is not disputed that defendant did not disclose his mental health problems to Halpin, who affirmed that he never suspected such problems as defend-

ant exhibited no outward signs or difficulty suggestive of an incapacity. Upon learning post-plea of defendant's mental health involvement, Halpin promptly moved for a competency hearing. County Court correctly concluded that "[t]here is no evidence in the record which should have caused the public defender to inquire into the defendant's ability to proceed prior to the entry of the guilty plea. Nor is there any credible evidence that the defendant was coerced, misled or tricked by his [former] counsel." Under these circumstances, we cannot agree with defendant's claim that Halpin's failure to investigate or raise the issue of defendant's competency prior to his plea constituted ineffective assistance of counsel (*see People v D'Adamo*, 293 AD2d at 872; *see also People v Jenks*, 69 AD3d 1120, 1122 [2010], *lv denied* 14 NY3d 841 [2010]).

The record further reflects that Halpin provided meaningful representation, including pursuing pretrial motions, aggressively cross-examining witnesses, regularly conferring with defendant—who remained actively engaged in ongoing plea negotiations—and successfully moving for a competency hearing after reviewing the presentence investigation report (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147-148 [1981]). Faced with overwhelming evidence against defendant, Halpin employed a legitimate strategy of advising defendant to consider entering a guilty plea and seek sentencing leniency based upon his showing of remorse and acceptance of responsibility. Indeed, defendant affirmed during the plea colloquy that he was satisfied with counsel's services, and we find no abuse of discretion in County Court's denial of defendant's motion to withdraw his guilty plea (*see People v Alexander*, 97 NY2d at 485-486; *People v Mitchell*, 73 AD3d 1346, 1347 [2010], *lv denied* 15 NY3d 922 [2010]).

Defendant's remaining arguments similarly lack merit and do not require extended discussion. To the extent that defendant raises issues related to his initial 2004 competency hearings and the initial denial of his motion to withdraw his plea, those orders were vacated by our 2007 decision, which "restore[d] defendant to the postplea status he occupied in October 2003" (39 AD3d at 886). As defendant, represented by BetzJitomir, was afforded a full and fair opportunity on remittal in 2007 to move for a competency examination and hearing to address his competency to proceed and at the time of his plea, and no lasting prejudice is demonstrated, defendant's claims directed at the postplea proceedings were rendered academic by our decision negating those proceedings and vacating the ensuing orders.

With regard to defendant's claims challenging the post-

remittal proceedings as a "pro forma review with a predetermined conclusion," they are belied by the record, which reflects that the remittal proceedings were handled with great care. Those proceedings commenced in April 2007, and counsel was afforded adequate time to make motions challenging defendant's competency (and County Court assured that counsel would be given more time if needed) and, later, to withdraw defendant's plea; defendant was examined by psychiatrists in mid-2008 and determined to be fit to proceed. The hearing on defendant's December 2007 motion to withdraw his plea was not held until November 2008, and the comprehensive decision and order denying defendant's motion to withdraw his plea was issued in July 2009. Contrary to his claims, defendant was not deprived of due process during those extensive and meticulous remittal proceedings, which were neither rushed nor "pro forma," and the detailed conclusions reached by the court are fully supported by the weight of the record evidence.

Defendant's remaining contentions also lack merit.

Rose, Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.